UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RANDY RUSSELL YBARRA,<br><br>Plaintiff,<br><br>v.<br><br>RODRIGUEZ, et al.,<br><br>Defendants. | CAUSE NO. 3:19-CV-343-JD-MGG |

OPINION AND ORDER

Randy Russell Ybarra, a prisoner without a lawyer, is proceeding in this case "on an Eighth Amendment claim for money damages against Investigator Rodriguez, Counselor Wilson, Sergeant Statham, Officer Dunlap, Deputy Warden Payne, and Lieutenant Lott for failing to protect him against attacks from other inmates from January 22, 2019, to March 8, 2019[.]" ECF 9 at 5. The defendants filed a motion for summary judgment. ECF 100. Ybarra filed a response and the defendants filed a reply. ECF 112, 121. The summary judgment motion is now fully briefed and ripe for ruling.

I.   FACTS

In the middle of 2018, Ybarra complained about a correctional officer at Indiana State Prison. ECF 100-1 at 18-20. The officer was investigated and quit after it was determined she was bringing items into the prison. *Id.* at 18. Offenders in Ybarra's cell house told Ybarra to recant his story, demanded that Ybarra pay them for messing up their "route," and began threatening Ybarra. *Id.* at 18-19. Ybarra did not submit any protective custody requests in 2018 because he was not worried about the threats and

believed they would work out. *Id.* at 20. Offenders began stealing Ybarra's food on numerous occasions between mid-2018 and January 2019, but Ybarra did not report these incidents to the prison staff. *Id.* at 21.

Ybarra first submitted a protective custody request on January 22, 2019, because he had a large commissary order coming and he knew the offenders would try to steal it. *Id.* at 14-15, 20-21. After submitting his protective custody request, Ybarra was interviewed by Investigator Rodriguez. *Id.* at 15; ECF 100-2. Ybarra reported he was "fed up" with things and did not want to pay the offenders any more money. ECF 100-1 at 15. At that time, Ybarra did not know the names of those threatening him. *Id.* at 22-23. Ybarra was unable to provide Investigator Rodriguez with names, cell house units, or descriptions for any of the people threatening him. ECF 100-2. At the time of Ybarra's interview with Investigator Rodriguez, Ybarra had not received any threats for three months but members of a gang had been disrespectful toward him. ECF 100-1 at 24-25; ECF 100-2. Investigator Rodriguez told Ybarra she would try to investigate his allegations but he had not provided her with any verifiable information. ECF 100-2. Investigator Rodriguez did not place Ybarra in protective custody and allowed him to return to general population. ECF 100-1 at 25. Ybarra had no further interactions with Investigator Rodriguez after that date. *Id.*

On January 25, 2019, Ybarra wrote a request to Counselor Wilson asking if he could be moved out of the cell house and into protective custody. *Id*. Ybarra never heard back from Counselor Wilson and does not know if Counselor Wilson received his request. *Id.* at 26-28.

On January 27, 2019, Ybarra was assaulted. *Id.* at 28. While on his way to chow, two men came up behind him and hit him a few times with their fists. *Id.* Ybarra did not see who attacked him and could not identify them. *Id.* It was a surprise assault that Ybarra was not anticipating. *Id.* at 28-29. Ybarra did not report the assault to anyone. *Id.* at 29.

On January 31, 2019, Ybarra saw an offender steal money from out of his bag. *Id.* at 30. In response, Ybarra went to the custody hall and submitted a second request for protection, asserting he had been assaulted the prior weekend and had received threats to have boiling water thrown on him. *Id.*; ECF 27-1 at 2. Ybarra wrote down the names and cell house units of some of the individuals he was requesting protective custody from. *Id.*; ECF 100-1 at 31. While at the custody hall, Ybarra had a conversation with Lt. Lott. ECF 100-1 at 31. Ybarra told Lt. Lott he did not want to return to his cell house because people had threatened to throw boiling water on him. *Id.* at 31-32. Lt. Lott escorted Ybarra back to his cell house and placed him on "key lock" status, meaning his cell was not opened for offender movement and had to be manually opened by a correctional officer. *Id.* at 32. Ybarra remained on key lock status while his second request for protection was being reviewed. *Id.* at 37. While on key lock status, Ybarra remained in his cell at all times and had his food brought to him. *Id.* at 33.

Ybarra's second request for protection was reviewed by Counselor Wilson, who received the request for protection on February 1, 2019. ECF 100-3. Counselor Wilson interviewed Ybarra in his cell and Ybarra wrote down the cell locations of the offenders from whom he was seeking protection. *Id.* Counselor Wilson asked Ybarra whether any

3

of the offenders he listed came up to him and threatened him and Ybarra replied, "No. I stay away from them." *Id.* The day after Ybarra was placed on key lock, an offender named Raymond attempted to hit Ybarra with a lock through his cell bars and spit on him. ECF 100-1 at 33-35. It was an unprovoked attack that Ybarra did not expect. *Id.* at 35. Ybarra reported this attack to Counselor Wilson. *Id.* at 36. Counselor Wilson interviewed Ybarra a second time on February 4, 2019. ECF 100-3. Counselor Wilson's notes indicate that, during this interview, he asked Ybarra if he was involved in a drug-related debt and Ybarra responded affirmatively. ECF 100-3. Later that afternoon, Counselor Wilson appeared at Ybarra's cell and explained to him he had recommended his request for protection be denied due to "no verifiable information." *Id.*

On February 6, 2019, Counselor Wilson told the correctional officers to take Ybarra off key lock status. ECF 100-1 at 37. Ybarra told Sgt. Statham, the officer on duty, that if he was taken off key lock he would be assaulted. *Id.* at 49. Ybarra could not recall whether he provided Sgt. Statham with any additional information or whether he named any specific individuals he feared. *Id.* Ybarra also gave Sgt. Statham a written request in hopes he would contact someone higher up. *Id.* Ybarra never saw Sgt. Statham again after giving him his written request, and he does not know what Sgt. Statham did with the written request. *Id.* That same day, Ybarra also submitted an informal grievance to Deputy Warden Payne *Id.* at 51-52.

The afternoon after Ybarra was taken off key lock, he was assaulted while socializing with other offenders outside of a cell. *Id.* at 38. Six to eight gang members asked to speak with him and then "sucker punched" him and "stomped" him. *Id.* at 39.

4

Ybarra did not have an opportunity to alert any correctional officers immediately prior to the assault. *Id.* at 40. No correctional staff witnessed the assault. *Id.* at 41. Officer Dunlap encountered Ybarra shortly after the assault and saw Ybarra's bloody face. *Id.* at 41-42. Officer Dunlap could not have done anything to stop the attack. *Id.* at 42. Ybarra never asked Officer Dunlap for protective custody. *Id.*

Ybarra was seen by medical staff on February 7, 2019, and remained in the medical unit until March 1, 2019. *Id.* at 44-45. While Ybarra was housed at the medical unit, he received a response to his informal grievance from Deputy Warden Payne. *Id.* at 53. Upon Ybarra's release from medical, he was transferred from C-cell house to A-cell house. *Id.* at 45. Prior to March 1, 2019, Ybarra had not been threatened by any individuals in A-cell house. *Id.* at 46. Ybarra began receiving threats in A-cell house around March 2, 2019. *Id.* Ybarra reported these complaints to Deputy Warden Payne. *Id.* at 47. Ybarra was never physically assaulted in A-cell house and was taken out of general population on March 8, 2019, and placed in a protective custody unit. *Id.* at 47-48. Neither side disputes these facts, and the courts accepts them as undisputed.

II. **ANALYSIS**

STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine

5

issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## EIGHTH AMENDMENT STANDARD

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). Deliberate indifference is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To prevail, the plaintiff must establish that the defendant "had actual knowledge

6

of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756.

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Moreover, "[e]xercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Id.* at 554.

Ybarra is proceeding against six defendants "for failing to protect him against attacks from other inmates from January 22, 2019, to March 8, 2019[.]" ECF 9 at 5. Each defendant will be addressed in turn.

<u>Investigator Rodriguez</u>

Here, the undisputed facts show Ybarra did not complain to Investigator Rodriguez about a specific threat to his safety. *See Pope*, 86 F.3d at 92. Specifically, the evidence shows Investigator Rodriguez interviewed Ybarra on January 22, 2019, and Ybarra told Investigator Rodriguez he had received threats but could not provide the names, cell locations, or descriptions of any of the offenders who had threatened him.

7

ECF 100-1 at 23; ECF 100-2. Moreover, Ybarra told Investigator Rodriguez he had not received any threats for three months prior to the interview. ECF 100-2. This conversation was the only interaction Ybarra had with Investigator Rodriguez. ECF 100-1 at 25. Ybarra asserts Investigator Rodriguez "did not do anything but punish [him] for coming forward," but the recorded interview shows Investigator Rodriguez questioned Ybarra at length and attempted to obtain verifiable details about the risks he faced. ECF 100-2; ECF 112 at 4-5. Because Ybarra did not provide Investigator Rodriguez with any verifiable details regarding the threats he received, no reasonable jury could find Investigator Rodriguez was deliberately indifferent to Ybarra's safety for returning him to general population on January 22, 2019. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) (holding that "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence"). Summary judgment is warranted in favor of Investigator Rodriguez.

Counselor Wilson

The evidence shows Ybarra submitted a request for protection to Counselor Wilson on January 31, 2019, in which Ybarra asserted he was assaulted the prior weekend and had received threats to have boiling water thrown on him. ECF 27-1 at 2. Ybarra also informed Counselor Wilson that an inmate named "Raymond" attacked him with a lock and spit on him through his cell bars the day after he was placed on key lock. ECF 100-1 at 36. Moreover, unlike Ybarra's interview with Investigator Rodriguez, Ybarra gave Counselor Wilson the cell locations of some of the offenders from whom he was seeking protection. ECF 100-3. Counselor Wilson denied Ybarra's request for

8

protection on February 4, 2019, "due to no verifiable information." ECF 100-3. Counselor Wilson also noted that Ybarra admitted to being involved in a drug-related debt, but Ybarra responds he never was involved in a drug debt and never told any staff he was involved in a drug debt. *Id.*; ECF 27-1 at 3; ECF 112 at 7. Two days after Counselor Wilson denied Ybarra's request for protection, Ybarra was removed from key lock and assaulted later that day. ECF 100-1 at 38.

The defendants argue Counselor Wilson was not deliberately indifferent because he investigated Ybarra's allegations and failed to substantiate them. ECF 101 at 17. Ybarra responds that Counselor Wilson did not conduct any investigation and denied his request for protection because he believed the dispute was related to a drug debt. ECF 112 at 7-8, 32-33. The defendants reply that Wilson interviewed Ybarra twice in an attempt to verify the threat he faced, but that his investigation revealed there was no verifiable risk. ECF 121 at 8. The defendants do not provide any other evidence of what investigation Counselor Wilson conducted. Accordingly, the question before the court is whether Counselor Wilson was deliberately indifferent for rejecting Ybarra's request for protection after interviewing Ybarra twice and conducting no further investigation into the facts Ybarra alleged.

Here, construing the facts in the light most favorable to Ybarra, a reasonable jury could conclude Counselor Wilson was deliberately indifferent to Ybarra's safety for rejecting his request for protection without adequately investigating his allegations. Specifically, Ybarra provided Counselor Wilson with the cell locations of some of the offenders from whom he was seeking protection, and there is no indication Counselor

9

Wilson made any attempt to question these offenders to verify Ybarra's claims. It is unclear which offenders Ybarra identified, but a reasonable jury could conclude they were the offenders threatening Ybarra or had information about the threats Ybarra had received. The evidence indicates Counselor Wilson investigated Ybarra's request for protection only by interviewing Ybarra twice and concluding he owed a drug debt, which Ybarra disputes. ECF 27-1 at 3; ECF 100-3.

The defendants also argue Counselor Wilson is entitled to qualified immunity because "it is not clearly established that reviewing an offender's complaint, interviewing the offender twice but simply being unable to verify the offender's accusations amounts to deliberate indifference in violation of the Eighth Amendment." ECF 101 at 19. However, crediting Ybarra's version of events, there are disputed material facts regarding whether Counselor Wilson conducted a constitutionally adequate investigation prior to rejecting Ybarra's request for protection. *See Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) ("[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation"); *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (holding that "a defendant may not avoid trial on the grounds of qualified immunity" if there are genuine issues of fact regarding the elements of the deliberate-indifference claim). Accordingly, because a reasonable jury could conclude Counselor Wilson was deliberately indifferent to Ybarra's safety for rejecting his request for protection without

conducting an adequate investigation, the summary judgment motion is denied as to Ybarra's claim against Counselor Wilson.

### Sgt. Statham

Here, there is no evidence Sgt. Statham knew of a specific threat to Ybarra's safety. *See Pope*, 86 F.3d at 92. Specifically, the evidence shows: (1) Sgt. Statham was on duty at Ybarra's cell house when Counselor Wilson instructed the correctional officers to remove Ybarra from key lock status; (2) Ybarra told Sgt. Statham he would be assaulted once removed from key lock status and gave Sgt. Statham a written request for protection he "was hoping" Sgt. Statham would pass to his superiors; (3) Ybarra could not recall whether he gave Sgt. Statham any specific details regarding the threat he faced; and (4) Ybarra never saw Sgt. Statham again after giving him the written request. ECF 100-1 at 49. Thus, at the time of Ybarra's interaction with Sgt. Statham, Sgt. Statham knew Ybarra's request for protection had been reviewed and denied and he had been ordered removed from key lock status. There is no evidence Ybarra provided Sgt. Statham with any new information showing a specific threat of harm existed. Accordingly, no reasonable jury could find Sgt. Statham was deliberately indifferent to Ybarra's safety for removing him from key lock status. Summary judgment is warranted in favor of Sgt. Statham.

### Officer Dunlap

Ybarra asserts Officer Dunlap was deliberately indifferent because he saw Ybarra's injuries after he was assaulted on February 6, 2019, and took no measures to protect him. ECF 112 at 20-21. However, Ybarra conceded he never requested protective

11

custody from Officer Dunlap and that there was nothing Officer Dunlap could have done to prevent the February 6, 2019, assault. ECF 100-1 at 42. Because it is undisputed that (1) Officer Dunlap could not have prevented the February 6, 2019, assault, and (2) Ybarra was not physically assaulted at any point after his interaction with Officer Dunlap, a reasonable jury could not conclude Officer Dunlap was deliberately indifferent to Ybarra's safety. *See Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) (damages for a deliberate indifference claim cannot be predicated on an unrealized attack). Summary judgment is warranted in favor of Officer Dunlap.

<u>Deputy Warden Payne</u>

The undisputed evidence shows: (1) Ybarra submitted an informal grievance to Deputy Warden Payne on February 6, 2019, after he was removed from key lock status; (2) Ybarra was assaulted later that afternoon; (3) Ybarra received Deputy Warden Payne's response to his grievance after he was assaulted and was housed in the medical unit; and (4) Ybarra was not assaulted at any point after he received Deputy Warden Payne's grievance response. ECF 100-1 at 51-53. There is no evidence Deputy Warden Payne both received and had a reasonable opportunity to respond to Ybarra's grievance prior to the February 6, 2019, assault. Thus, because there is no evidence Deputy Warden Payne knew of a substantial risk to Ybarra before Ybarra was assaulted, no reasonable jury could conclude Deputy Warden Payne acted with deliberate indifference to Ybarra's safety. *See Babcock*, 102 F.3d at 272. Summary judgment is warranted in favor of Deputy Warden Payne.

Lt. Lott

The undisputed evidence shows Ybarra had a discussion with Lt. Lott on January 31, 2019, and Lt. Lott instructed Ybarra to fill out a protective custody request and returned him to his cell on key lock status while that request was being processed. ECF 100-1 at 31-32. Ybarra asserts Lt. Lott should have placed him in "restrictive housing" instead of returning him to his cell, but Lt. Lott was not deliberately indifferent to Ybarra's safety for returning him to his cell and placing him on key lock status so no offenders could enter his cell. ECF 112 at 19. Thus, there is no evidence by which a reasonable jury could conclude that Lt. Lott acted with deliberate indifference to Ybarra's safety. Summary judgment is warranted in favor of Lt. Lott.

For these reasons, the court:

(1) DENIES the motion for summary judgment (ECF 100) with respect to Ybarra's claim against Counselor Wilson but GRANTS it in all other respects;

(2) DISMISSES WITH PREJUDICE Ybarra's claims against Investigator Rodriguez, Sergeant Statham, Officer Dunlap, Deputy Warden Payne, and Lieutenant Lott; and

(3) REMINDS the parties this case is now proceeding only on Ybarra's claim against Counselor Wilson.

SO ORDERED on July 30, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT